UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
                                    :
CAROL AND JOHN BERARDI,             :
                                    :    Civil Action No.
        Plaintiffs,                 :    06-3245 (NLH)
                                    :
    v.                              :
                                    :
WILLIAM HUMENEK and                 :
HRS ASSOCIATES,                     :    OPINION
                                    :
        Defendants and Third        :
        Party Plaintiffs,           :
    v.                              :
                                    :
CITY OF OCEAN CITY,                 :
                                    :
        Third-Party Defendant.:
```

**APPEARANCES:**
ERIC H. WEITZ
SEIDEL, WEITZ, GARFINKLE & DATZ, LLC
36 TANNER STREET
SUITE 300
HADDONFIELD, NJ 08033
*Attorney for Plaintiffs Carol and John Berardi*

CYNTHIA P. LIEBLING
DUNCAN & HENDERSHOT
400 FELLOWSHIP ROAD
SUITE 200
MT. LAUREL, NJ 08054
*Attorney for Defendants and Third-Party Plaintiffs William Humenek and HRS Associates*

ROBERT P. MERENICH
GEMMEL, TODD & MERENICH, P.A.
767 SHORE ROAD
P.O. BOX 296
LINWOOD, NJ 08221
*Attorney for Third-Party Defendant City of Ocean City*

**HILLMAN, District Judge**

This case involves a slip and fall accident on property

located at 101 Corinthian Avenue in Ocean City, New Jersey (the "premises").  Defendants William Humenuk and HRS Associates have filed a motion for summary judgment.  For the reasons explained below, defendants' motion is granted.

### I.   JURISDICTION

This Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity between the plaintiffs, citizens of Pennsylvania and defendants, citizens of New Jersey, and because plaintiffs allege that the amount in controversy exceeds $75,000.00.

### II.   BACKGROUND and UNDISPUTED FACTS

On August 17, 2004, plaintiff Carol Berardi tripped over an alleged defect in the sidewalk located in front of the premises and fell to the ground.  Mrs. Berardi alleges that as a result of her fall, she suffered severe injuries requiring her to undergo several surgeries to repair her left hand.  Mrs. Berardi brought a negligence claim against defendants.  Her husband, John Berardi, brought a loss of consortium claim.

Defendants HRS Associates, a general partnership, ("HRS" or the "partnership") and William Humenuk filed a third-party complaint against the City of Ocean City for contribution and indemnification.  The general partners of HRS are William Humenuk and his sister Eleanor Strayer.  Mr. Humenuk and Ms. Strayer inherited the property from their mother and hold the property in

a general partnership under the advice of their estate counsel. It is undisputed that HRS was formed as New Jersey General Partnership which under state law is defined an association to "carry on as co-owners a business for profit...." N.J.S.A. 42:1A-2.  It also appears undisputed that the partnership filed tax returns as such, had its own bank account, and retained maintenance records.

   Despite the commercial nature of the business association used to formally own the property, the defendants have offered proof - uncontested by plaintiffs - that the actual use of the property is essentially residential.  The property is in a residential neighborhood.  No rental permits have ever been sought or obtained.  The property has never been leased to a third party, nor has it generated any income as no economic or commercial activity occurs there.  The premises is simply used by the general partners and their families as a vacation home, sharing expenses.  On the issue of prior notice, it appears uncontested that prior to the accident the defendants never received any complaints about the sidewalk, and never repaired, altered or reconstructed it.

   Shortly after Mrs. Berardi's fall, Mr. Humenuk received a violation notice dated September 7, 2004, from the City of Ocean City.  Mr. Humenuk states that he advised Robert Hart, the Ocean City Code Enforcement Official, that it was the City's

responsibility to fix the sidewalk because the City had created the problem during a recent storm sewer drainage improvement project completed in the area prior to the accident.  Afterwards, the Public Works Department of the City of Ocean City repaired the sidewalk.  HRS or its general partners did not receive any violation summons for repairs.

Although the parties vigorously contest the characterization of the premises, the underlying facts in this case are not in dispute.  The issue before the Court is whether the premises is a commercial property or a residential property as different standards apply depending upon the type of property.  Since that issue is dispositive, and the underlying facts not in dispute, this matter is ripe for summary judgment.[1]

As a District Court in New Jersey exercising diversity jurisdiction, we look to the law of this State for the

---

[1] The plaintiffs insist that because some characteristics of the premises may fairly be described as "commercial"(e.g., use of the general partnership form of ownership) that material issues of fact preclude summary judgment.  The plaintiffs misconstrue the standard for summary judgment.  Arguing that an otherwise undisputed fact should have more or less weight in applying a legal standard does not create a material factual dispute precluding summary judgment.  Put in terms of this case, arguing that use of the partnership form makes the premises "commercial" under the applicable law is a legal determination not a factual dispute calling for a jury determination.  Defendants admit that they held the property by use of a general partnership.  They argue, nonetheless, that other undisputed facts establish the premises as a residential property after a faithful application of the controlling law.  This is a quintessentially legal determination, within the proper province of the court.

controlling precedent.  See Chemical Leaman Tank Lines, Inc. v. Aetna Casualty and Surety Co., 89 F.3d 976, 983 (3d Cir. 1996) (stating that "[a]s a federal court sitting in diversity, we must apply the substantive law of New Jersey.") (citing Borse v. Piece Goods Shop, Inc., 963 F.2d 611, 613 (3d Cir. 1992)).

   Historically, property owners in New Jersey operated under the common law rule of "no liability" in which a landowner was not liable for defects in the sidewalk due to normal wear and tear regardless of whether the property was commercial or residential.  See Stewart v. 104 Wallace Street, Inc., 432 A.2d 881, 885 (N.J. 1981).  In Stewart, the New Jersey Supreme Court overruled the rule of "no liability" for commercial property owners, and held that "... commercial landowners are responsible for maintaining in reasonably good condition the sidewalks abutting their property and are liable to pedestrians injured as a result of their negligent failure to do so." Id. at 887.  The court in Stewart found that an apartment building was a commercial property even though the units inside the building were residential.  Id.

   The New Jersey Supreme Court was clear that its holding was confined to owners of commercial property, thus creating the commercial versus residential distinction.  Id. at 888.  The court left it to future cases to make the determination as to property type on a case-by-case basis.  Id.  Although, at times

challenging to reconcile, the case law since Stewart has helped to further define the rule first set out in that decision.

In Hambright v. Yglesias, 491 A.2d 768, 769 (N.J.Super.A.D. 1985), the court interpreted the finding in Stewart that the apartment building was commercial property as an indication that it is the nature of the ownership that mattered, not the use to which the property is put. In Hambright, it was undisputed that the owner of an apartment house operated it as a business venture and, therefore, it was determined to be a commercial property. Id.

In Brown v. St. Venatius School, 544 A.2d 842, 843 (N.J. 1988), the issue was whether a non-profit entity was liable to a pedestrian injured on an abutting sidewalk. The court found that St. Venantius School "... charged tuition to its students, employed teachers and other personnel, purchased supplies and teaching materials, and maintained a physical plant," thus making it a commercial property even though it was a non-profit institution.

In Borges v. Hamed, 589 A.2d 199, 202 (N.J.Super.L.D. 1990), the court held that "... an owner-occupied three family house in a residential zone, with two rental units occupied solely by family members, is 'residential' property for purposes of applying the rule in Stewart []." Although the defendants collected rent from their mother and sister, seemingly a

commercial activity, the court relied heavily on the fact that defendants resided at the property.  Id.; Cf. Wilson v. Jacobs, 760 A.2d 818, 821 (N.J.Super.A.D. 2000) (finding property commercial where father charged adult daughter rent but did not live at the property).  In Borges, the Court recognized that commercial landlords are in a better position to spread the risk of loss and pass the increased cost of insurance on to customers than are residential homeowners.  589 A.2d at 202.  It found the landowner in Borges to be more like a residential homeowner trying to afford house payments by taking in family members as renters than a commercial business owner trying to turn a profit. Id.

In Abraham v. Gupta, 656 A.2d 850, 851 (N.J.Super.A.D. 1995), the plaintiff slipped and fell on snow on the sidewalk abutting defendant's vacant lot which was zoned for commercial use, but was not used in connection with any business enterprise owned or controlled by defendant.  Id.  The court held that the property was not "commercial" within the meaning of Stewart. Paramount to the court's decision in Abraham was the underlying policy behind holding commercial owners liable in Stewart: that "the benefits enjoyed by the 'commercial establishment' by use of abutting sidewalks for ingress and egress purposes should impose a concomitant duty to keep those means of ingress and egress in reasonably good repair."  Id. at 852.  The court further noted a

second policy consideration since Stewart: "the commercial enterprise's capacity to spread the risk of loss." Id. Applying these policy considerations the court held:

> The lot is not owned by or used as part of a contiguous commercial enterprise or business. There is no daily business activity on the lot to which a safe and convenient access is essential. The lot has no means of generating income to purchase liability insurance or to spread the risk of loss by the increase in cost of goods sold or services rendered. Simply because it is designated "commercial" by the City's zoning ordinance is an insufficient basis to impose the Stewart liability rule upon its owner.

Id.

Finally, in Briglia v. Mondrian Mortgage Corp., 698 A.2d 28, 29 (N.J.Super.A.D. 1997), the court held that "... a mortgagee in possession of vacant residential property is not a commercial landowner for purposes of imposing sidewalk liability." In Briglia, the court looked to whether there was any commercial activity associated with the property and found that the vacant house did not generate income and that the defendant did not derive a benefit from the sidewalk abutting a vacant house. Id. at 30. The court concluded that defendant was not conducting "a daily business" to which "a safe and convenient access is essential." Id. at 31. The court also noted that no authority existed supporting the proposition "that changing the activity on a property from a residential use to no use at all results in the imposition of liability." Id. The court also rejected the idea

that liability can be imposed if the property could be used as commercial. Id. (finding that "[s]idewalk liability is imposed if it is used for commercial purposes at the time of the occurrence giving rise to an injury[;] use during other periods is irrelevant.").

A review of the relevant case law shows that the New Jersey courts focus on the following factors in deciding whether a property is to be considered commercial or residential: (1) whether a current commercial enterprise is being conducted on the property; (2) whether the sidewalk is being traversed by customers or potential customers of the owner; and (3) whether the owner uses the property as his or her residence.

Here, the property owners are not conducting a commercial enterprise. Although plaintiffs characterize the partnership as an "investment," the premises was inherited by the children of the former property owner. The premises has never been rented or otherwise used as a commercial enterprise. No rental permits were ever applied for by the partnership. Tax returns filed on behalf of the partnership show it as "inactive."[2]

Morever, applying the test set forth in Briglia, pedestrians on the sidewalk do not benefit or potentially benefit

---

[2] Defendants also argue that the partnership never made any profits and operated at a loss every year. The New Jersey courts do not focus on whether a profit was realized, but rather whether any commercial activity occurred.

the defendants in any monetary way.  There is no mechanism by which the defendants could spread the cost of liability for maintaining the sidewalk among customers.  Finally, the premises is used as a part-time residence, as a vacation home, by the general partners and their families.[3]  The general partners pay the taxes, and the utility bills are in Mr. Humenuk's personal name.  The premises is covered by a residential homeowner's policy, not a commercial policy.

The single fact that the property is owned by a general partnership does not, under the facts in this case, turn it into a commercial property.  See Briglia, 698 A.2d at 29.  Plaintiffs have not presented the Court with any facts that show the premises was actually used as a commercial enterprise.  The fact that it could be so used, or has the potential to be so used, is not sufficient proof under New Jersey law.  See id.

Since the premises is not a commercial property, New Jersey law concerning liability for a residential property must apply.  Absent negligent construction or repair of the sidewalk by the property owner, residential property owners cannot be held liable

---

[3] In Stewart, the court advised that "... commonly accepted definitions of 'commercial' and 'residential' property should apply... ." 432 A.2d at 889.  The definition of "residential" is "used as a residence or by residents."  See Merriam-Webster's Collegiate Dictionary (11th ed. 2006).  "Resident" is defined as "living in a place for some length of time."  Id.  Even though Mr. Humenuk and his sisters do not permanently reside at the premises full-time, they do reside there during certain summer months and on occasion in the winter.

for defects in the abutting sidewalk.  See Rodriquez v. Cordasco, 652 A.2d 1250, (N.J.Super.A.D. 1995) (citing Borges 589 A.2d at 169); Wasserman v. W.R. Grace & Co., 656 A.2d 453, 455 (N.J.Super.A.D. 1995) (stating that "[t]he law is clear.  Residential property owners are immune from sidewalk liability.") (citing Liptak v. Frank, 502 A.2d 1147 (N.J.Super.A.D. 1985), cert. denied, 511 A.2d 652 (N.J. 1986)).

Defendants state that it did not perform any construction or repair to the sidewalk and, therefore are immune from liability as residential owners.  Plaintiffs do not dispute that defendants did not perform any construction or repair to the sidewalk.  Rather, plaintiffs point to a letter that Mr. Humenuk wrote to the City of Ocean City dated September 17, 2004, in response to the City's notice of violation in which Mr. Humenuk stated that he believed that the uneven sidewalk was the result of the storm sewer project that was completed over the past several years by the City.  Plaintiffs argue that this letter shows that defendants had notice of the hazardous condition rendering them liable, or at least creates a genuine issue of material fact.  Plaintiffs, however, cite no law in support of either of these positions.[4]

---

[4] It is not clear whether plaintiffs make this argument under a theory of residential or commercial ownership.  Since the defendants are not commercial property owners, we assume that it pertains to residential ownership.

11

Further, although Mr. Humenuk was deposed, they do not cite to any deposition testimony in which he admitted he had notice[5] or, or contributed in some way to the alleged defect. The letter, written after Mrs. Berardi's accident, states what Mr. Humenuk at that time believed was the cause of the defect, not that he was aware of the defect before the accident. As such, plaintiffs have not provided any facts that could show that defendants are liable as residential owners.

### IV.   **CONCLUSION**

For the foregoing reasons, defendants' motion for summary judgment is granted. An Order consistent with this Opinion will be entered.

s/Noel L. Hillman  
NOEL L. HILLMAN, U.S.D.J.

At Camden, New Jersey

---

[5] Even if Mr. Humenuk had notice, plaintiffs have not cited to any case law holding that notice of a defect strips a residential landowner of immunity. See Crisonino v. Balint, 2006 WL 452613, at *1 (N.J.Super.A.D. 2006) (finding that residential homeowner was not liable even though he testified that the sidewalk was raised on the day of the incident, that he noticed the uneven sidewalk prior to plaintiff's fall, and that he took no steps to correct the condition or post warning signs).